UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



SOUTHERN BANK AND TRUST COMPANY,

      Plaintiff,

v.                              Civil No.: 2:14cv255

PRIDE GROUP, LLC, PRADIP SHAH,
VIJAY PATEL, and VIJAY SHAH,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on an unopposed Motion for Default Judgment, ECF No. 11, filed by Southern Bank and Trust Company ("Plaintiff") requesting that the Court enter judgment in its favor under Federal Rule of Civil Procedure 55(b)(2) against Pradip Shah, Vijay Patel, and Vijay Shah (collectively "Individual Defendants"), and Pride Group, LLC ("Pride" or, collectively with Individual Defendants, "Defendants"). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Default Judgment and **DIRECTS** that default judgment be entered against Defendants in the amounts detailed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This action involves two promissory notes and a series of guaranties on such notes. Plaintiff alleges that Pride failed

to make timely payments on the two promissory notes and that Pradip Shah, Vijay Patel, and Vijay Shah failed to make payments as required under guaranties of such notes.

On March 15, 2006, Pride executed a promissory note ("First Note") with an original principal amount of $4,845,000.00 in favor of Bank of the Commonwealth. Compl. ¶ 7, ECF No. 1; id. Ex. 1, ECF No. 1-1. The interest rate for the First Note was 7.65 percent per annum; however, such note also contained a provision whereby Bank of the Commonwealth could increase the interest rate on the note by 4.00 percentage points upon default. See id. Ex. 1. On or about March 15, 2006, Pradip Shah, Vijay Patel, and Vijay Shah each executed separate commercial guaranties (respectively, "First P. Shah Guaranty," "First Patel Guaranty," and "First V. Shah Guaranty," and, collectively, "the First Guaranties") guaranteeing payment of the First Note. See id. ¶¶ 21, 29, 38. Individual Defendants each guaranteed payment of $2,422,500.00 on the First Note. Id. ¶¶ 21, 29, 38; Compl. Exs. 5, 7, 9, ECF Nos. 1-5, 1-7, 1-9. On January 20, 2009, Bank of the Commonwealth and Pride modified the terms of the First Note by revising the principal amount of the loan ("First Loan") evidenced by the First Note to $4,622,291.67 and by decreasing the interest rate on the note from 7.65 percent per annum to 6.75 percent per annum. Id. ¶ 8;

2

id. Ex. 2, ECF No. 1-2.[1]

On February 4, 2010, Pride executed a promissory note ("Second Note") in the principal amount of $190,000.00 in favor of Bank of the Commonwealth. Id. ¶ 15; id. Ex. 4, ECF No. 1-4. The interest rate for the Second Note was 6.75 percent per annum; however, such note also contained a provision whereby Bank of the Commonwealth could increase the interest rate on the note by 4.00 percentage points upon default. See id. Ex. 4. On or about February 4, 2010, Pradip Shah, Vijay Patel, and Vijay Shah each executed separate commercial guaranties (respectively, "Second P. Shah Guaranty," "Second Patel Guaranty," and "Second V. Shah Guaranty," and, collectively, "the Second Guaranties") guaranteeing payment in full of the Second Note. See id. ¶¶ 22,

---

[1] Although the text of the Change in Terms Agreement that modified the First Note does not show that Individual Defendants were a party thereto, see Compl. Ex. 2, Plaintiff has alleged—and the Court must accept as true for the purposes of resolving this motion—that Individual Defendants guarantied payment of "the First Note," and Plaintiff has defined "the First Note" to include the March 15, 2006 "First Original Note" and the Change in Terms Agreement, see id. ¶ 9. Thus, Plaintiff has alleged that the First Guaranties encompass both the original March 15, 2006 promissory note and the January 20, 2009 modification thereof. In addition, in the First Guaranties, Individual Defendants guarantied "the performance and discharge of all [Pride's] obligations under the Note . . ." and such guaranties state that "[t]he word "Note" means the promissory note dated March 15, 2006, in the original principal amount of $4,845,000.00 from [Pride] to [Plaintiff], together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement." Compl. Exs. 5, 7, 9. Accordingly, it appears that Individual Defendants have guaranteed Pride's performance under the First Note as modified by the Change in Terms Agreement.

30, 39; id. Exs. 6, 8, 10, ECF Nos. 1-6, 1-8, 1-10.[2]   On September 22, 2011, after being placed into receivership, Bank of the Commonwealth was closed by regulatory authorities.  Id. ¶ 10.

Thereafter, Plaintiff purchased and succeeded to all of Bank of the Commonwealth's interest in the First Loan, including the First Note and the First Guaranties; the Second Note; and the Second Guaranties.  See id. ¶¶ 10, 16, 23, 31-32, 40-41. Thus, Plaintiff is the current holder of the First Note, id. ¶ 12, and the Second Note, id. ¶ 19.

The First Note is in default.  Id. ¶ 11.  On November 14, 2013, Plaintiff demanded payment in full from Pride under the First Note.  Id. at 13.  However, Pride has failed to make payment and, therefore, is in default under the First Note and allegedly liable to Plaintiff for: 1) $1,513,145.49 in principal; 2) $213,824.32 in interest through May 30, 2014; 3) interest thereafter at the rate of interest after default provided for in the First Note; and 4) reasonable attorneys' fees and collection expenses.  Id. ¶ 14.  Plaintiff has also demanded payment in full under the First Guaranties.  Id. ¶¶ 24, 33, 42.  Individual Defendants have failed to make payment in

---

[2] Following Paragraph 38, the numbering of the paragraphs in the Complaint reverts back to Paragraph 22.  The Court's references to the paragraphs in the Complaint reflect the numbering if the Complaint's paragraphs had continued in order following Paragraph 38.

response to Plaintiff's demands. See id. ¶¶ 25, 34, 43. Therefore, Plaintiff alleges that, under the First Guaranties, Individual Defendants are liable to Plaintiff for: 1) $1,513,145.49 in principal; 2) $213,824.32 in interest through May 30, 2014; and 3) interest thereafter at the rate of interest after default provided for in the First Note; and 4) reasonable attorneys' fees and collection expenses. Id. ¶¶ 26, 35, 44.

The Second Note is also in default. Id. ¶ 17. Plaintiff demanded payment in full from Pride under the Second Note. Id. ¶ 19. However, Pride has failed to make payment and, therefore, is in default under the Second Note and allegedly liable to Plaintiff for: 1) $180,342.62 in principal; 2) $6,959.56 in interest through May 30, 2014; 3) interest thereafter at the rate of interest after default provided for in the Second Note; and 4) reasonable attorneys' fees and collection expenses. Id. ¶ 20. Plaintiff has also demanded payment in full under the Second Guaranties. Id. ¶¶ 24, 33, 42. Individual Defendants have failed to make payment in response to Plaintiff's demands. See id. ¶¶ 25, 34, 43. Therefore, Plaintiff alleges that, under the Second Guaranties, Individual Defendants are liable to Plaintiff for: 1) $180,342.62 in principal; 2) $6,959.56 in interest through May 30, 2014; 3) interest thereafter at the rate of interest after default provided for in the Second Note; and 4) reasonable attorneys' fees and collection expenses. Id.

¶ 20.  Id. ¶¶ 27, 36, 45.

On May 30, 2014, Plaintiff filed an action in this Court to recover from Pride under the First and Second Notes and from Individual Defendants under the First and Second Guaranties. ECF No. 1.  On June 5, 2014, Individual Defendants were served with process.  ECF No. 4.  On June 23, 2014, Pride was served with process through its registered agent.  ECF No. 7. Defendants failed to timely file an answer to the Complaint or otherwise respond thereto.  On July 18, 2014, the Clerk entered default as to Defendants.  ECF No. 10.

On September 19, 2014, Plaintiff moved for entry of default judgment.  Mot. for Default J., ECF No. 11.  In such motion, Plaintiff requests judgment against Defendants on the First Note and First Guaranties in the amount of $1,513,145.49 in principal, $263,074.88 in interest through September 19, 2014, and interest thereafter at the First Note's alleged rate of interest after default of 11.65 percent per annum.  Plaintiff seeks judgment against Defendants on the Second Note and Second Guaranties in the amount of $180,342.62 in principal, $12,829.91 in interest through September 22, 2014, and interest thereafter at the Second Note's alleged rate of interest after default of 10.75 percent per annum.

Plaintiff also seeks to recover reasonable attorneys' fees and collection expenses already incurred in the amount of

$121,528.00 and post-judgment attorneys' fees and expenses estimated at $30,000. In support of its request for attorneys' fees, Plaintiff initially submitted a declaration of Jeffrey Gray, Plaintiff's lead counsel in this action, and detailed billing entries to substantiate the amount of attorneys' fees billed by Plaintiff's counsel. In its initial briefing in support of its motion for default judgment, Plaintiff did not submit an affidavit from a disinterested local attorney attesting to the reasonableness of the hourly rates charged by Plaintiff's counsel or information concerning recent fee awards by courts in comparable cases.

On December 1, 2014, in light of Plaintiff's failure to submit either an affidavit of a local attorney or evidence of courts' fee awards in similar cases to establish the reasonableness of the hourly rates billed by Plaintiff's counsel, the Court entered an order taking Plaintiff's motion under advisement until Plaintiff supplemented its submission with 1) an affidavit from a disinterested, experienced local attorney attesting to the reasonableness of the hourly rates and hours billed, and 2) relevant biographical information for each attorney and staff member who billed services. ECF No. 15. In response to such order, Plaintiff requested that the Court reconsider its requirement that Plaintiff submit an affidavit to support the reasonableness of the attorneys' fees Plaintiff

7

seeks and, instead, allow Plaintiff to support the reasonableness of such fees based on decisions in comparable cases. Pl.'s Supplement to Mot. for Default J. & Req. for Recons., ECF No. 16. On December 17, 2014, Plaintiff submitted an additional supplement requesting that the Court consider a recent fee award in a very similar case in this District, Southern Bank & Trust Co. v. Priyam, LLC, to determine the reasonableness of Plaintiff's request for attorneys' fees. Pl.'s Supplement to Req. for Recons., ECF No. 17. With the benefit of Plaintiff's submissions in response to the Court's December 1, 2014 Order, this matter is now ripe for disposition.

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure provides that entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." Fed. R. Civ. P. 55(a). Such is the case here and, as noted above, the Clerk has entered default against Defendants in this matter. After securing entry of default, a plaintiff may then move for entry of default judgment. Rule 55(b)(2) provides that, where a claim is not for a sum certain, the plaintiff must apply to the court for entry of default judgment. Fed. R. Civ. P. 55(b)(2); EMI April Music, Inc. v. White, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009). The decision to enter default judgment lies within the sound

8

discretion of the court. Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953-54 (4th Cir. 1987); see EMI April Music, Inc., 618 F. Supp. 2d at 505 (citation omitted) (noting that "the moving party is not entitled to default judgment as a matter of right").

When a defendant defaults, he admits "the plaintiff's well-pleaded allegations of fact." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (internal quotation marks and citations omitted). To present well-pleaded allegations of fact, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Accordingly, in the default judgment context, factual allegations in the complaint are deemed admitted and the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Although well-pleaded factual allegations are accepted as true for default judgment purposes, a party who defaults does not admit the allegations in the claim as to the amount of

damages.  See Fed. R. Civ. P. 8(b)(6) (providing that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). For that reason, after a district court concludes that liability is established, it must then independently calculate the appropriate amount of damages. Ryan, 253 F.3d at 780-81. To assess the extent of a plaintiff's damages, a district court may conduct a formal evidentiary hearing under Rule 55(b)(2), or may determine damages based on affidavits or documents attached to the plaintiff's motion. See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 507 (4th Cir. 1998) (citation omitted) (noting that "in some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing."); cf. Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc., No. 6:09cv4, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (unpublished) (citation omitted) (finding "no need to convene a formal evidentiary hearing on the issue of damages" where the plaintiff submitted affidavits establishing the amount of damages); DirecTV, Inc. v. Yancey, No. 4:04cv11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (unpublished) (citation omitted) (deeming a hearing unnecessary because the plaintiff had "presented sufficient evidence to support its claim for damages, costs and fees by way

of uncontradicted affidavits").

### III. DISCUSSION

As noted above, Plaintiff requests that the Court enter default judgment against Defendants for breach of the First and Second Notes and the First and Second Guaranties and award Plaintiff reasonable attorneys' fees and costs. The Court will first consider whether it is appropriate to enter default judgment on Plaintiff's claims against Defendants. The Court will then assess whether to award Plaintiff the attorneys' fees and costs requested in Plaintiff's motion.[3]

#### A. Default Judgment on the Notes and Guaranties

In this case, Defendants were properly served with process, see ECF Nos. 4, 7, yet, failed to timely file any responsive pleading or otherwise respond to the Complaint. Thus, the well-pleaded factual allegations in the Complaint are deemed admitted, Ryan, 253 F.3d at 780 (citation omitted), and, to ascertain whether Defendants are liable to Plaintiff, the Court need only consider whether such allegations state a claim upon which relief can be granted, id. If liability is established, the Court must then determine whether it can appropriately award Plaintiff the damages it seeks in the Complaint. See id.;

---

[3] The Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000 and Defendants, citizens of Virginia, are completely diverse from Plaintiff, a citizen of North Carolina. See 28 U.S.C. § 1332; Compl. ¶¶ 1-3, 14, 20, 28, 37, 46.

*Portfolio Recovery Assocs., Inc. v. Portfolio Recovery Grp., LLC*, Civil No. 2:12cv649, 2013 WL 5723869, at *9 (E.D. Va. Oct. 18, 2013).

"Under Virginia common law, breach of a promissory note is encompassed under a breach of contract claim."[4]  *Premier Bank, Inc. v. Tech. Res., Inc.*, No. 1:13-CV-340, 2013 WL 6834380, at *5 (E.D. Va. Dec. 23, 2013) (citing *CIT Small Bus. Lending Corp. v. Core Holdings, LLC*, Civil No. 2:12cv505, 2013 WL 711395, at *1 (E.D. Va. Feb. 7, 2013)).  Under Virginia law, "[t]he elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the

---

[4] "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. Co. v. Tompkins*, 305 U.S. 64, 79 (1938)). "Virginia has long adhered to the traditional conflicts principle that the 'nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties.'" *Crosson v. Conlee*, 745 F.2d 896, 902 (4th Cir. 1984) (quoting *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1970)). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999)). If the selected "state is reasonably related to the purpose of the agreement, [the court] will apply the parties' choice of substantive law." *Hooper v. Musolino*, 364 S.E.2d 207, 211 (Va. 1988). Here, the First and Second Notes and the First and Second Guaranties expressly provide that they will be governed by "federal law applicable to [Plaintiff] and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions . . . ." *See* Compl. Exs. 1-2, 4-10. The Court concludes that such choice of Virginia law is reasonably related to the purposes of such agreements because Defendants are citizens of Virginia and the First and Second Notes and First and Second Guaranties were executed in Virginia. Thus, the Court will apply Virginia's substantive law to this action.

defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). In addition, to bring an action to enforce a note, such note must "be signed by the party who is to be charged thereby, or his agent." Va. Code Ann. § 8.01-27.

The Court **FINDS** that Plaintiff has alleged facts sufficient to state a cause of action against Defendants. The facts in the Complaint establish that Pride executed the First and Second Notes in favor of Bank of the Commonwealth and that Individual Defendants guaranteed Pride's performance of its obligations under such notes. Further, the Complaint indicates that Plaintiff has succeeded to Bank of the Commonwealth's interest in both loans to Pride, is the holder of the First and Second Notes, and is the beneficiary of the First and Second Guaranties.

With respect to Pride, the Court concludes that Plaintiff has stated a claim for breach of the First and Second Notes. Plaintiff has established that Pride owed Plaintiff a legally enforceable obligation in the form of the promises to pay embodied in the First and Second Notes. See Compl. ¶¶ 7, 10, 12, 15, 16, 18; id. Exs. 1, 4. Plaintiff has also alleged facts showing that Pride breached such obligation by failing to make payments on the First and Second Notes as demanded and that

13

Plaintiff suffered financial injury as a result of such failure. See id. ¶¶ 13-14, 19-20. Both notes have been signed by the party to be charged, Pride, and, therefore, are enforceable under Va. Code Ann. § 8.01-27. Thus, Plaintiff has stated a claim against Pride for breach of the First and Second Notes. See Filak, 594 S.E.2d at 614.

Likewise, the Court finds that Plaintiff has stated a claim against Individual Defendants for breach of the First and Second Guaranties. The First and Second Guaranties established that Individual Defendants owed enforceable obligations to Plaintiff to pay Plaintiff in the event Pride failed to perform its duties under the First and Second Notes. See Compl. ¶¶ 21-22, 29-30, 38-39; id. Exs. 5-10. The allegations in the Complaint also show that Individual Defendants failed to perform such obligations by failing to pay Plaintiff after it demanded payment following Pride's default and that Plaintiff has sustained financial harm as a result of such failure. See id. ¶¶ 24-27, 33-36, 42-45. Accordingly, Plaintiff has stated a claim against Individual Defendants for breach of the First and Second Guaranties. See Filak, 594 S.E.2d at 614.

Having determined that Plaintiff has stated a claim against Defendants, the Court must now consider whether it is appropriate to award Plaintiff the relief it requested in the Complaint. Plaintiff seeks to recover from Pride and the

Individual Defendants the outstanding principal and interest on the First and Second Notes, as well as post-judgment interest at the rate allegedly established in the First and Second Notes.

The Court **FINDS** that it is appropriate to award Plaintiff damages against Pride for breach of the First and Second Notes based on such notes and the Hill Declaration. Based on the First Note and Change in Terms Agreement attached to the Complaint, the Court concludes that, as of January 20, 2009, the First Note included a Principal Amount of $4,622,291.67, an interest rate of 6.75 percent per annum, and a rate of interest after default of 10.75 percent per annum. See Compl. Ex. 1-2. Similarly, based on the Second Note attached to the Complaint, the Court finds that, as of February 4, 2010, the Second Note included a principal amount of $190,000, an interest rate of 6.75 percent per annum, and a rate of interest after default of 10.75 percent per annum. See id. Ex. 4. The Declaration of James C. Hill, submitted in support of Plaintiff's motion, establishes that the amount due on the First Note as of September 19, 2014 was $1,513,145.49 in principal and $263,074.88 in interest, and that interest on such principal accrues thereafter at $451.84 per diem under the First Note's rate of interest after default. Decl. of James C. Hill at 4, ECF No. 12-1. Likewise, the Hill Declaration establishes that the amount due on the Second Note as of September 19, 2014 was

15

$180,342.62 in principal and $12,829.21 in interest, and that interest on such principal accrues thereafter at $53.85 per diem under the Second Note's rate of interest after default.  Id. Therefore, based on the First and Second Notes and the Hill Declaration, the Court will **GRANT IN PART** Plaintiff's motion and direct the Clerk to enter judgment in its favor against Pride: on the First Note, in the amount of $1,513,145.49 in principal, $263,074.88 in interest through September 19, 2014, and pre-judgment interest at the rate of $451.84 per diem between such date and the entry of judgment; and, on the Second Note, in the amount of $180,342.62 in principal, $12,829.21 in interest through September 19, 2014, and pre-judgment interest at the rate of $53.85 per diem between such date and the entry of judgment.

Moreover, the Court **FINDS** that it is appropriate to award Plaintiff damages against Individual Defendants for breach of the First and Second Guaranties based on such guaranties and the Hill Declaration.  The First Guaranties, attached to the Complaint, establish that Pradip Shah, Vijay Patel, and Vijay Shah each guaranteed payment of $2,422,500 of the principal amount on the First Note, as well as accrued unpaid interest thereon.  Compl. Exs. 5, 7, 9.  The Second Guaranties, also attached to the Complaint, establish that Pradip Shah, Vijay Patel, and Vijay Shah also each guaranteed full payment of

16

Pride's obligations under the Second Note. Compl. Exs. 6, 8, 10. As noted above, the Hill Declaration provides a sufficient basis for the Court to determine the amount Pride owes to Plaintiff under both the First and Second Notes. Therefore, in light of the First and Second Guaranties, the Court will also **GRANT IN PART** Plaintiff's motion and direct the Clerk to enter judgment in favor of Plaintiff against Individual Defendants in the following amounts: on the First Guaranties, in the amount of $1,513,145.49 in principal, $263,074.88 in interest through September 19, 2014, and pre-judgment interest at the rate of $451.84 per diem between such date and the entry of judgment; and, on the Second Guaranties, in the amount of $180,342.62 in principal, $12,829.21 in interest through September 19, 2014, and pre-judgment interest at the rate of $53.85 per diem between such date and the entry of judgment.

Plaintiff also seeks post-judgment interest at the rates of interest after default stated in the First and Second Notes. Under 28 U.S.C. § 1961,

> [i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment.

28 U.S.C. § 1961(a). Nonetheless, the Court of Appeals for the

Fourth Circuit has suggested that the "parties may 'stipulate a different rate [of post-judgment interest], consistent with state usury and other applicable law.'" Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc., 501 F. App'x 247, 254 (4th Cir. 2012) (quoting Carolina Pizza Huts, Inc. v. Woodward, 67 F.3d 294 (4th Cir. 1995) (unpublished table decision)). Yet, absent a clear, unequivocal agreement by the parties, the Court must apply the uniform federal rate of post-judgment interest established in 28 U.S.C. § 1961. See id.; Braunstein v. Pickens, 274 F.R.D. 568, 574 (D.S.C. 2011) (collecting cases indicating that the parties' agreement must be expressed in "clear, unambiguous, and unequivocal language" for a court to award post-judgment interest at a rate other than the statutory rate).

In this case, Plaintiff has failed to demonstrate that the Court should award post-judgment interest in excess of the statutory rate.  As stated above, the First and Second Notes both establish a four percent per annum increase in the rate of interest on such notes following default.  However, the notes do not expressly indicate that the parties agreed that such rates of interest after default would apply as the rate of post-judgment interest in any action on such notes.  Therefore, the Court concludes that the First and Second Notes do not establish a clear, unequivocal agreement between Plaintiff and Pride that

18

the rates of interest after default in each note established an agreed rate of post-judgment interest. See S. Bank & Trust Co. v. Priyam, LLC, Action No. 2:14cv254, 2014 WL 7239123, at *1 (E.D. Va. Dec. 16, 2013) (Smith, C.J.) (in an almost identical matter, adopting a magistrate judge's report and recommendation finding that the inclusion of a rate of interest after default in a promissory note did not unequivocally demonstrate an agreed rate of post-judgment interest). Thus, to the extent Plaintiff seeks post-judgment interest in excess of the statutory rate, the Court will **DENY IN PART** Plaintiff's motion. The Court will **GRANT IN PART** Plaintiff's motion and award Plaintiff post-judgment interest at the rate established by 28 U.S.C. § 1961(a).

### B. Attorneys' Fees and Costs Incurred to Date

Plaintiff also seeks an award of reasonable attorneys' fees and costs. Given that Plaintiff has invoked the Court's diversity jurisdiction to assert a state-law cause of action in which it seeks attorneys' fees on the basis of the contractual provisions in the First and Second Notes and First and Second Guaranties, "Virginia law governs whether attorneys' fees are available and, if so, in what amount." Airlines Reporting Corp. v. Sarrion Travel, Inc., 846 F. Supp. 2d 533, 536 (E.D. Va. 2012) (citing W. Insulation, L.P. v. Moore, 362 F. App'x 375, 379 (4th Cir. 2010) (unpublished)). Under Virginia law,

"'contractual provisions shifting attorneys' fees . . . are valid and enforceable.'" Id. (quoting Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 730 F. Supp. 2d 513, 518 (E.D. Va. 2010)). However, where a contract does not "fix the precise amount of fees, 'a fact finder is required to determine from the evidence what are reasonable fees under the facts and circumstances of the particular case.'" Id. (quoting Mullins v. Richlands Nat'l Bank, 403 S.E.2d 334, 335 (Va. 1991)).

The party seeking an award of attorneys' fees has the burden of proving the reasonableness of such fees. See Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998). To determine whether the amount of attorneys' fees sought is reasonable,

> "[a] fact finder may consider, inter alia, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate."

W. Square, L.L.C. v. Commc'n Techs., Inc., 649 S.E.2d 698, 702 (Va. 2007) (quoting Chawla, 499 S.E.2d at 833). In determining a reasonable fee, "[w]hile expert testimony ordinarily is necessary to assist the fact finder, such testimony is not required in every case." Tazewell Oil Co. v. United Va. Bank/Crestar Bank, 413 S.E.2d 611, 621 (Va. 1992) (citing Mullins, 403 S.E.2d at 335). Indeed, the Supreme Court of

Virginia has upheld an award of attorneys' fees supported by extensive "contemporary time records detailing the activities for which the fees were sought" and "affidavits of [the plaintiff's] attorneys upon the reasonableness of the hourly rates charged and the accuracy of the time billed." Id. at 620. Under Virginia law, the "amount of the attorneys' fees to be awarded" lies in the discretion of the trial court. Holmes v. LG Marion Corp., 521 S.E.2d 528, 533 (Va. 1999) (citations omitted).

The Fourth Circuit has indicated that, when determining the reasonableness of an award of attorneys' fees under Virginia law, a court may look to federal law "as a persuasive, nonconflicting guide in interpreting reasonable fees under Virginia law." GE Supply, a Div. of Gen. Elec. Co. v. Thomas, 62 F.3d 1414 (4th Cir. 1995) (unpublished table decision).[5] Applying the applicable federal-law principles as persuasive guidance, even though Plaintiff claims that the requested fees are reasonable, the requests are uncontested, and Defendants are contractually obligated to pay all reasonable attorneys' fees,

---

[5] See also Airlines Reporting, 846 F. Supp. 2d at 536 (quoting GE Supply, 62 F.3d 1414); Elderberry of Weber City, LLC v. Living Ctrs. Se. Inc., No. 6:12-cv-00052, 2014 WL 3900389, at *9 n. 1 (report and recommendation) (noting that "District Courts in the Fourth Circuit sitting pursuant to diversity jurisdiction vary as to whether they apply the Virginia law factors or [federal-law] Johnson/Kimbrell's factors, or a combination of both, in an attorneys' fee analysis" and collecting cases), adopted by, 2014 WL 3900389 (W.D. Va. Aug. 11, 2014)).

"the Court is nevertheless obligated to review the fee award request independently for reasonableness." Kennedy v. A Touch of Patience Shared Hous., Inc., 779 F. Supp. 2d 516, 525 (E.D. Va. 2011). Under the federal law applicable to awards of attorneys' fees, a court's review of the reasonableness of a request for attorneys' fees necessarily begins with the determination of the "lodestar figure," which is calculated "by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)). The lodestar figure is "[t]he most useful starting point for determining the amount of a reasonable fee," because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). When determining the "reasonable" number of hours and rate, the following factors should guide the Court's exercise of discretion:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal

22

community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson, 560 F.3d at 243-44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). However, "the court need not address in detail every single one of these factors." Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assocs., LLC, 699 F. Supp. 2d 766, 768 (E.D. Va. 2009). In addition to these factors, "the court must exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' as such hours are not reasonably expended on the litigation." Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (quoting Hensley, 461 U.S. at 434).

In this case, an award of attorneys' fees is appropriate because the First and Second Notes and First and Second Guaranties provide that Defendants will pay Plaintiff's attorney' fees and costs in a lawsuit to enforce such notes and guaranties, see Compl. Exs. 1-2, 4-10, and such provisions are enforceable under Virginia law, see Airlines Reporting, 846 F. Supp. 2d at 536. However, under Virginia law—as under federal law—the Court must determine the reasonableness of the fees Plaintiff seeks to recover. The Court will do so by assessing the reasonableness of the hours billed by Plaintiff's attorneys and the reasonableness of such attorneys' hourly rates.

### 1. Reasonable Hours Billed

After a careful review of the billing records that Plaintiff submitted in support of its motion, ECF No. 16-1, the Court concludes that the number of hours billed by Plaintiff's attorneys is reasonable. Plaintiff, as the fee applicant, has the burden of proving that the number of hours billed is reasonable. Chawla, 499 S.E.2d at 833; Hensley, 461 U.S. at 437. The significant amount in controversy in this action, $4,500,000 in principal and $129,000 in unpaid interest and late fees at the time of Defendants' default in mid-November 2013, Decl. of Jeffrey Gray at 2, ECF No. 16-1, and more than $1,900,000 in principal and unpaid interest as of September 19, 2014, see Hill Decl. at 1-2, ECF No. 12-1, supports the reasonableness of the hours Plaintiff's attorneys billed. In addition, this action involved complex matters requiring skilled attorneys and the expenditure of significant time, especially considering that the action involved, inter alia, attempts to restructure obligations owed by Defendants to Plaintiff, foreclosure proceedings, the emergency appointment of a receiver to protect collateral securing the First and Second Notes, various receivership proceedings, and a contested motion to intervene in a state-court proceeding to sell property securing such notes. See Gray Decl. at 2-5. Moreover, Plaintiff has provided detailed billing entries describing the work

24

Plaintiff's attorneys performed in connection with this action. See Mem. Supp. Mot. for Default J. Ex. 2 at 10-57. From such records, the Court has assessed the necessity of the hours Plaintiff's attorneys billed in connection with this matter. Finally, Plaintiff's attorneys achieved a favorable result in selling the property securing the First and Second Notes and in obtaining a judgment in this action on such notes and the First and Second Guaranties. Therefore, having considered the factors in Chawla—and the substantially similar Robinson factors—and carefully analyzed Plaintiff's attorneys' detailed billing entries, the Court **FINDS** that the hours billed by Plaintiff's attorneys to date are reasonable.

## 2. Reasonable Hourly Rate

Under Virginia law, in determining the reasonableness of a fee award, "whether the fees incurred were consistent with those generally charged for similar services" is an important factor for the Court's consideration. W. Square, 649 S.E.2d at 702. Furthermore, when a court awards attorneys' fees pursuant to federal law, the Fourth Circuit has explicitly held that it is error to "excus[e] [a fee applicant] from [its] well-established burden to provide evidence of an applicable prevailing rate as a starting point for the attorney's fees analysis." Westmoreland Coal Co. v. Cox, 602 F.3d 276, 290 (4th Cir. 2010). The fee applicant meets its burden by, in addition to the attorney's own

affidavits, "produc[ing] satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Grissom, 549 F.3d at 321 (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)); accord Westmoreland, 602 F.3d at 290 (citing Plyler, 902 F.2d at 277). Specifically, the Fourth Circuit explains:

> The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of actual rates which counsel can command in the market.

Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987) (citations omitted); see also Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir. 1986) (noting the "customary" practice of submitting "affidavits from other area attorneys as evidence that [the] requested rates were within the market rates generally charged for similar services").

The Court **FINDS** that the hourly rates charged by most of Plaintiff's attorneys are reasonable based on fee awards in similar cases.[6]   Along with the affidavit of its lead counsel

---

[6] In this case, to support the requested award of attorneys' fees, Plaintiff initially only submitted billing entries and an affidavit of its lead counsel attesting to the reasonableness of the attorneys' fees it seeks to recover. Under Virginia law, Tazewell suggests that an affidavit of a plaintiff's attorney and billing records can establish the reasonableness of an award of attorneys' fees. See 413 S.E.2d at 621. However, to support an award of attorneys' fees pursuant to federal law, the affidavit of Plaintiff's lead attorney— which did not note any specific similar cases in which courts have

attesting to the reasonableness of the hourly rates charged by Plaintiff's attorneys, Gray Decl. at 7, Plaintiff has submitted biographical information for the attorneys and staff who provided services to Plaintiff, as well as information regarding comparable cases in which courts have approved similar billing rates. After comparing the hourly rates charged by the partners, attorneys of counsel, associates, staff attorney, and paralegals who performed legal services for Plaintiff with the hourly rates included in fee awards in similar cases, and considering such hourly rates with the added context provided by the biographical information Plaintiff submitted, the Court concludes that the hourly rates charged by all but one of Plaintiff's counsel in this case are reasonable. Such rates are comparable to the rates courts have approved in this area in similar matters. See S. Bank & Trust Co. v. Priyam, LLC, Action No. 2:14cv254, 2014 WL 7239123, at *1 (E.D. Va. Dec. 16, 2014) (Smith, C.J.) (in an almost identical matter, adopting a

---

approved of hourly rates comparable to those charged by Plaintiff's attorneys-would be insufficient to substantiate the reasonableness of Plaintiff's attorneys' hourly billing rates. E.g., Project Vote, 887 F. Supp. 2d at 710 (citing Plyler, 902 F.2d at 277). As noted above, the Court applies Virginia law to determine the reasonableness of the fees Plaintiff seeks because Virginia law establishes Plaintiff's right to recover such fees. See Peter Farrell Supercars, Inc. v. Monsen, 82 F. App'x 293, 301 (4th Cir. 2003) (unpublished). Plaintiff's additional submissions of its attorneys' biographical information and information concerning fee awards in similar cases bolsters the Court's conclusion that the attorneys' fees Plaintiff seeks are reasonable under both Virginia law and the federal standard for determining reasonableness.

magistrate judge's report and recommendation approving the hourly rates charged by the same attorneys and paralegals as those in this matter, other than Messrs. Starr and Beaman); Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc., No. 2:07cv530, 2009 WL 4841017, at *7 (E.D. Va. Oct. 23, 2009) (unpublished) (finding that a partner's billing rate of $465.00 per hour is reasonable).

However, the Court **FINDS** that Plaintiff has failed to submit sufficient evidence to demonstrate that the hourly rate of Mr. Starr, $565 per hour, is a reasonable hourly rate within this area in cases similar to this action. The only case that Plaintiff submitted in support of its motion, Lake Wright Hospitality, approved an hourly rate $100 lower than the hourly rate sought for Mr. Starr's services and the affidavit Plaintiff provided involved the reasonableness of attorneys' hourly rates in an eminent domain matter dissimilar to the case at bar.[7] Although Mr. Starr's hourly rate may, in fact, be reasonable based on his experience and the nature of the services he performed, Plaintiff has not carried its burden of demonstrating that Mr. Starr's hourly rate is reasonable. See Chawla, 499

---

[7] Tellingly, in the affidavit submitted by Plaintiff—an affidavit originally used to support the reasonableness of attorneys' fees in a different matter—while Mr. Barr opines that an hourly rate of $550 per hour is reasonable for the lead attorney in a complex eminent domain matter, Mr. Barr also indicates that his hourly rate did not exceed $475 per hour. See Affidavit of Stanley G. Barr, Jr. at 7, ECF No. 16-5.

S.E.2d at 833; Hensley, 461 U.S. at 437. Therefore, the Court will **DENY IN PART** Plaintiff's motion to the extent it seeks to recover fees for Mr. Starr's services at an hourly rate of $565 per hour. The Court will only award fees for Mr. Starr's services at a rate of $465 per hour—the rate approved in Lake Wright Hospitality—and will reduce the amount of attorneys' fees awarded for Mr. Starr's services by $150 to reflect such rate. Accordingly, the Court will **GRANT IN PART** Plaintiff's motion and award $121,378 in attorneys' fees based on the reasonable number of hours billed by Plaintiffs' attorneys, to date, at the reasonable hourly rates discussed above.

## C. Future Attorneys' Fees and Costs

Plaintiff also seeks to recover the attorneys' fees and costs that it anticipates incurring in connection with post-judgment collection proceedings. Under Virginia law, in connection with an award of attorneys' fees under a fee-shifting provision in a contract, a court may also award reasonable attorneys' fees for future services in connection with the case. See Mullins, 403 S.E.2d at 335. The Supreme Court of Virginia has stated that

> [i]f future services of an attorney will be required in connection with a case, the fact finder should make a reasonable estimate of their value. In so doing, the fact finder should estimate the time to be consumed, the effort to be expended, the nature of the services to be rendered, and any other relevant circumstances.

Id.  However, "a fact finder may only do so on the basis of a record that allows the fact finder to make a reasonable judgment as to future fees that, more likely than not, will be incurred." Airlines Reporting, 846 F. Supp. 2d at 540 & n.9 (citations omitted).  Courts have denied an award of future attorneys' fees when a plaintiff has presented insufficient evidence to determine the reasonableness and necessity of the future attorneys' fees sought.  See id. at 540; Akula v. Airbee Wireless Inc., No. 1:08cv421, 2009 WL 122795, at *2 (E.D. Va. Jan. 14, 2009) (unpublished) (citing Prospect Dev. Co. v. Bershader, 515 S.E.2d 291, 301 (Va. 1999); GT Warehousing Co. v. Mattrix, Inc., At Law No. 105741, 1991 WL 835298, at *1 (Va. Cir. Ct. Nov. 14, 1991)).

The Court **FINDS** that Plaintiff has failed to present sufficient evidence to allow the Court to award future attorneys' fees to Plaintiff.  In this case, Plaintiff seeks $30,000 in attorneys' fees as a reasonable estimate of the attorneys' fees it will incur in post-judgment collection proceedings.  While such a properly supported assertion does not strike the Court as particularly unreasonable, the only evidence that Plaintiff has submitted to support such figure is the affidavit of its lead counsel stating simply that he "also anticipate[s] that [Plaintiff] is reasonably likely to expend an additional $30,000 in fees and costs in its attempts to collect

the judgment entered in this case." Gray Decl. at 7. Aside from the conclusory assertion of its attorney, whose credentials and expertise the Court does not question, Plaintiff has not submitted any evidence concerning the number of hours it reasonably expects to incur in post-judgment proceedings or the reasonable fees in this area for the sort of legal services that will be required in such proceedings. Therefore, the Court concludes that it cannot award future attorneys' fees to Plaintiff solely on the basis of Plaintiff's counsel's purely speculative assertion that he reasonably estimates that Plaintiff will incur $30,000 in attorneys' fees in post-judgment proceedings because the Court cannot determine whether such figure is reasonable. See Priyam, 2014 WL 7239129, at *1, *6 (adopting magistrate judge's report and recommendation that the court could not award $30,000 in post-judgment attorneys' fees based solely on the declaration of the plaintiff's counsel). Accordingly, the Court will **DENY IN PART** Plaintiff's motion to the extent it seeks an award of $30,000 in future attorneys' fees.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Default Judgment, ECF No. 11. The Court **GRANTS** Plaintiff's motion to the extent it seeks default judgment in this action, but **DENIES** such motion to the

31

extent Plaintiff seeks post-judgment interest in excess of the rate established by 28 U.S.C. § 1961(a).  The Court **GRANTS** Plaintiff's motion to the extent it seeks an award of reasonable attorneys' fees, but, as noted above, **DENIES** Plaintiff's motion to the extent the attorneys' fees sought by Plaintiff are unreasonable.

The Court **DIRECTS** the Clerk to **ENTER** judgment against Pride Group, LLC, Pradip Shah, Vijay Patel, and Vijay Shah in the amount of $1,693,488.11 in principal, $275,904.09 in pre-judgment interest through September 19, 2014, pre-judgment interest at the rate of $505.69 per diem between such date and the entry of judgment, post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), and attorneys' fees and costs in the amount of $121,378.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____ /s/
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 28 , 2015